[Cite as *State v. Smith*, 2013-Ohio-342.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | ) | |
| | ) | |
| PLAINTIFF-APPELLANT, | ) | |
| | ) | CASE NO. 12 MA 64 |
| V. | ) | |
| | ) | OPINION |
| LARRY LEE SMITH, | ) | |
| | ) | |
| DEFENDANT-APPELLEE. | ) | |

CHARACTER OF PROCEEDINGS:       Criminal Appeal from Court of Common Pleas of Mahoning County, Ohio Case No. 10CR1209

JUDGMENT:       Affirmed

APPEARANCES:
For Plaintiff-Appellant

Paul Gains
Prosecutor
Ralph M. Rivera
Assistant Prosecutor
21 W. Boardman St., 6th Floor
Youngstown, Ohio 44503

For Defendant-Appellee

Atty. John Jeffrey Limbian
201 E. Commerce St.
Suite 346
Youngstown, Ohio 44503

Attorney Mark Lavelle
1045 Tiffany Blvd. Suite 3
Youngstown, Ohio 44514

JUDGES:

Hon. Gene Donofrio
Hon. Joseph J. Vukovich
Hon. Cheryl L. Waite

Dated: February 1, 2013

DONOFRIO, J.

{¶1} Plaintiff-appellant, the State of Ohio, appeals from a Mahoning County Common Pleas Court judgment suppressing the statements made to police by defendant-appellee, Larry Lee Smith.

{¶2} On October 6, 2010, a woman came to the Canfield Police Department where she told Detective Brian McGivern that appellee had performed oral sex on her against her will. Appellee is a physician who had his office in Canfield. The woman alleged the rape had occurred during an office visit.

{¶3} Two days later, Detectives McGivern and Brian Datillo went to appellee's office. They informed appellee of the allegations against him and asked him some questions. Appellee asked the detectives if they could continue the questions later because he had patients to see. The detectives agreed and left appellee's office.

{¶4} A few hours later, appellee went to the police department where he spoke with Detectives McGivern and Datillo. Detective Datillo told appellee that he was not under arrest and that he was free to leave. The detectives did not read appellee his Miranda rights. The detectives then once again informed appellee what the victim had alleged and asked to hear his side of the story. Detective Datillo told him that he needed to know if appellee had consensual oral sex with the woman and he explained the differences between forced sex and consensual sex. He told appellee several times that if the sex was consensual, it was not rape. At the time, Detective Datillo was unaware that if a doctor has sex with his patient, he is guilty of sexual battery. After repeated questions by the detectives, and repeated denials by appellee, appellee eventually admitted to having consensual oral sex with the woman. The entire interview lasted a little over an hour after which appellee left the police station.

{¶5} A Mahoning County Grand Jury indicted appellee on one count of rape, a first-degree felony in violation of R.C. 2907.02(A)(2)(B), and one count of sexual battery, a third-degree felony in violation of R.C. 2907.03(A)(6).

{¶6} Appellee filed a motion to suppress the statement he gave to police.

Appellee asserted that the police interrogation resulted in his involuntary confession, asserting that the police never gave him his Miranda warnings and tricked him into confessing by giving him false information.

{¶7} The trial court held a hearing on appellee's motion where it heard testimony from Detective McGivern. It subsequently found that the police repeatedly made a false promise to appellee that if he admitted consensual sex with his patient, it would not be considered a crime. This promise, the court found, undermined appellee's "capacity for self-determination [so] that his election to waive the right [against self-incrimination] and incriminate himself is fatally impaired." For this reason, the court granted appellee's motion to suppress. The court also stated that it made no finding as to whether the detectives' failure to give Miranda warnings rendered the statements inadmissible.

{¶8} The state filed a timely notice of appeal on April 4, 2012.

{¶9} The state raises a single assignment of error that states:

THE TRIAL COURT SHOULD HAVE DENIED APPELLANT'S [sic] MOTION TO SUPPRESS, BECAUSE COMPETENT AND CREDIBLE EVIDENCE ESTABLISHED THAT HE VOLUNTARILY OFFERED INCULPATORY STATEMENTS AFTER DET. McGIVERN MADE A CORRECT STATEMENT OF THE LAW, WHICH WAS FREE FROM COERCION AND UNDUE PRESSURE.

{¶10} The state argues that the trial court should not have suppressed the statements appellee made to police. It contends that competent, credible evidence does not support the trial court's decision. More specifically, the state asserts that Det. McGivern's statement to appellee that consensual sex with a patient does not constitute rape was a correct statement of the law. It points out that while Det. McGivern was mistaken as to the effect of sexual contact between a patient and a doctor (sexual battery), his statement regarding consensual sex and rape were correct. The state goes on to point out that during the interview Det. McGivern never

raised his voice, did not frisk appellee, told appellee he was free to leave at any time, and did not make any threats.

{¶11} Our standard of review with respect to a motion to suppress is first limited to determining whether the trial court's findings are supported by competent, credible evidence. *State v. Winand*, 116 Ohio App.3d 286, 288, 688 N.E.2d 9 (7th Dist.1996), citing *Tallmadge v. McCoy*, 96 Ohio App.3d 604, 608, 645 N.E.2d 802 (9th Dist.1994). Such a standard of review is appropriate as, "[i]n a hearing on a motion to suppress evidence, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and evaluate the credibility of witnesses." *State v. Venham*, 96 Ohio App.3d 649, 653, 645 N.E.2d 831 (4th Dist.1994). An appellate court accepts the trial court's factual findings and relies upon the trial court's ability to assess the witness's credibility, but independently determines, without deference to the trial court, whether the trial court applied the appropriate legal standard. *State v. Rice*, 129 Ohio App.3d 91, 94, 717 N.E.2d 351 (7th Dist.1998). A trial court's decision on a motion to suppress will not be disturbed when it is supported by substantial credible evidence. *Id.*

{¶12} The trial court's factual findings in this case were as follows. The detectives told appellee he was accused of raping a female patient. They repeatedly assured appellee that if he admitted to having oral sex with the woman and it was consensual, it would not be a crime. The detectives repeated this and other similar statements regarding the perceived legality of sex with patients over and over again to appellee. Finally, after repeated denials, appellee told the detectives, "Is that what you want to hear, that it was consensual?" Appellee then admitted to sexual contact with the victim.

{¶13} The court further found that the interrogation was conducted without Miranda warnings in a 17' x 11' booking room where appellee was not offered seating. Appellee was not handcuffed or threatened. The interrogation was dominated by police questioning. Appellee is a well-educated 70-year-old man who has been subject to police investigation and criminal charges in the past.

**{¶14}** The trial court's factual findings are supported by competent, credible evidence. In addition to the hearing transcript, the parties submitted a copy of the audio tape of the interview. The tape of the interview supports the trial court's findings.

**{¶15}** Early in the interview, Det. McGivern asked appellee if he performed oral sex on the woman in question. Appellee responded "no." As the interview moved along, Det. McGivern asked appellee at least five more times if he performed oral sex on the woman and each time appellee said "no."

**{¶16}** After approximately 30 minutes, with appellee denying performing oral sex each time Det. McGivern asked, Det. McGivern changed his tactics. Det. McGivern told appellee that he knew oral sex occurred and he believed the woman came in and things got a little out of hand. Det. McGivern then told appellee that he believed the sex was consensual, "which is not a crime." Det. McGivern told appellee: "You are allowed to have sexual relationships with your clients. Is it unethical? Yes. Is it illegal? No, it's not illegal." Det. McGivern then asked appellee once again if he had oral sex with the woman and again appellee denied it.

**{¶17}** Det. McGivern, along with Det. Datillo, again told appellee that they knew oral sex occurred. Det. McGivern asked appellee if he still believed having sex with patients was illegal and appellee said "yes." Det. McGivern then told appellee: "I know the law, obviously * * * and I'm telling you it is not illegal * * * to have sex with your patients" and "It's wrong, it's unethical," but "I'm not the ethical police."

**{¶18}** Again Det. McGivern asked appellee if he still believed it was illegal to have sex with his patients and again appellee said "yes." So Det. McGivern continued by telling appellee: "I'm telling you there's an Ohio Revised Code with all the Ohio state laws that it is not illegal as a physician to have sex with your client" and "I'm telling you there is nowhere in that book [the Ohio Revised Code] that says you are not allowed to have sex with your patient."

**{¶19}** And once again Det. McGivern told appellee that he knew oral sex occurred. He told appellee, "If this shit was consensual, I can live with that." This

time appellee responded, "Okay, what do you want me to say, it's consensual?" Det. McGivern told appellee he wanted to know the truth. Appellee then stated, "Okay, it's consensual." The confession came approximately 47 minutes into the interview.

{¶20} Because the trial court's findings of fact are supported by competent, credible evidence, we must move on to consider whether the trial court applied the appropriate legal standard.

{¶21} Based on the facts set out above, the trial court concluded that appellee's capacity for self-determination as to whether to make incriminating statements was undermined by the detectives' false statements.

{¶22} A suspect voluntarily makes his decision to waive his right against self-incrimination unless his will is overborne and his capacity for self-determination is critically impaired due to coercive conduct by the police. *State v. Otte*, 74 Ohio St.3d 555, 562, 660 N.E.2d 711 (1996). A confession is not voluntarily made if it is extracted by any sort of threats or violence, if it is obtained through any direct or implied promises, even slight promises, or if it is obtained by the exertion of improper influence. *Malloy v. Hogan*, 378 U.S. 1, 7, 84 S.Ct. 1489 (1964), citing *Bram v. United States*, 168 U.S. 532, 18 S.Ct. 183 (1897). General admonitions to tell the truth do not render a confession involuntary. *State v. Patel*, 2d Dist. No. 2010-CA-77, 2011-Ohio-6329, ¶75.

{¶23} In finding that appellee's confession was not made voluntarily, the trial court relied on *State v. Jenkins*, 192 Ohio App.3d 276, 2011-Ohio-754, 948 N.E.2d 1011 (2d Dist.). In that case Jenkins was arrested on burglary charges. He made the police aware of his drug problem. An officer then made statements to Jenkins that suggested he could get Jenkins treatment in lieu of conviction. Jenkins then made several incriminating statements to police. However, Jenkins was not eligible for treatment in lieu of conviction. On Jenkins's motion, the trial court suppressed his statements to police based on the officer's misstatement of the law, finding that it rendered Jenkins's confession involuntary.

{¶24} On the state's appeal, the Second District concluded that while the

officer did not guarantee treatment in exchange for Jenkins's confession, the officer's conduct and words implied that such a benefit was a possibility. *Id.* at ¶54. Quoting its previous decision in *State v. Jackson*, 2d Dist. No. 02CA00001, 2002-Ohio-4680, ¶40, the court stated, "false promises made by police to a criminal suspect that he can obtain lenient treatment in exchange for waiving his Fifth Amendment privilege so undermines the suspect's capacity for self-determination that his election to waive the right and incriminate himself in criminal conduct is fatally impaired." *Jenkins*, at ¶51. The court concluded in Jenkins's case that intervention in lieu of conviction was not available as a matter of law, and the officer's false representations undermined Jenkins's "capacity for self-determination and impaired his decision to provide incriminating statements." *Id.* at ¶54.

**{¶25}** The case at bar, the state alleges, is distinguishable from *Jenkins* because in this case Det. McGivern's statement to appellee that consensual sex between a doctor and a patient is not rape is a correct statement of the law. Thus, it contends that in this case there was not a complete misstatement of the law as there was in *Jenkins*. The state further alleges that Det. McGivern never expressed to appellee that he would not be prosecuted for any other crimes that might result from the investigation. Therefore, the state contends, appellee made his confession freely and voluntarily.

**{¶26}** Contrary to the state's assertion, the case at bar is very similar to *Jenkins*. The distinctions that the state attempts to draw do not accurately portray the facts in this case. The state alleges that Det. McGivern's statements to appellee were that consensual sex between a doctor and a patient is not *rape*, which is a correct statement of the law. But Det. McGivern made many other incorrect statements of the law. Det. McGivern told appellee, repeatedly, that having sex with a patient was not *illegal* and was not a *crime*. This is not a correct statement of the law. In fact, appellee was charged with violating R.C. 2907.03(A)(6), which provides: "No person shall engage in sexual conduct with another, not the spouse of the offender, when any of the following apply * * * The other person is * * * or a patient in

a hospital or other institution, and the offender has supervisory * * * authority over the other person." Thus, when Det. McGivern told appellee that nowhere does the Revised Code state you are not allowed to have sex with your patient, he gave him an incorrect statement of the law.

{¶27} And not only did Det. McGivern give appellee an incorrect statement of the law, he repeated the incorrect statement over and over in an attempt to convince appellee to admit to consensual sex. The detective's statements included "you are allowed to have sexual relationships with your clients," "Is it illegal? No, it's not illegal," and "I know the law, obviously * * * and I'm telling you it is not illegal * * * to have sex with your patients." Appellee denied having oral sex with his patient no less than five times through 47 minutes of police interrogation before finally admitting to consensual oral sex. And his admission only came after Det. McGivern told him at least seven times that it was not illegal for him to have sex with his patient. Given these facts and the incorrect statement of the law, the trial court applied the appropriate legal standard when it found that appellee's will was overborne and his capacity for self-determination was critically impaired due to coercive conduct by the police. Therefore, the trial court did not err in granting appellee's motion to suppress.

{¶28} Accordingly, the state's sole assignment of error is without merit.

{¶29} For the reasons stated above, the trial court's judgment is hereby affirmed.

Vukovich, J., concurs.

Waite, J., concurs.